UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ALICIA OUSLEY, *et al.*,

on behalf of themselves and
others similarly situated,      :

           Plaintiffs,

   v.

                             :

CG CONSULTING, LLC, *et al.*,

           Defendants.

Case No. 2:19-cv-01744
Judge Sarah D. Morrison
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

This hybrid wage and hour Fair Labor Standards Act collective and putative Rule 23 class action is before the Court on two motions filed by Plaintiffs Alicia Ousley, Michael Starkey, and Josh Votaw, on behalf of themselves and others similarly situated: a Motion to Certify Rule 23 Class (ECF No. 103) and a Motion for Partial Summary Judgment (ECF No. 120). Defendants opposed both motions (ECF Nos. 116, 121) and Plaintiffs replied (ECF Nos. 118, 122). For the reasons stated below, the Motion to Certify Rule 23 Class is **DENIED**, and the Motion for Partial Summary Judgment is **GRANTED in part** and **DENIED in part**.

### I.    BACKGROUND

Plaintiffs are former employees of Defendant CG Consulting, LLC, a limited liability company that owns and operates bars and restaurants in the adult entertainment industry. Plaintiff Ousley was a bartender. (30(b)(6) Dep., ECF No.

100-1, 85:4–6.) Plaintiffs Starkey and Votaw were floor hosts. (Votaw Dep., ECF No. 99-1, 15:1–2; 30(b)(6) Dep. 85:10–12.) Bartenders that worked under the same station share their tips (30(b)(6) Dep. 79:11–13); floor hosts share their tips (*id.*). Both bartenders and floor hosts are categorized as tipped employees by CG, and a "tip credit" is applied to their pay. (*Id.* 32:16–33:8.) Other employees who are categorized as tipped employees paid a tip credit are servers, door hosts, and deejays. (*Id.* 33:12–34:2.)

Bartenders' primary job duties include dispensing and fulfilling drink orders, operating point of sales systems, and closing end shift registers. (*Id.* 34:3–7.) Floor hosts' primary duties include checking IDs and ensuring the safety of the premises and employees. (*Id.* 34:12–16.)

Plaintiff Ousley filed this action in May 2019. (ECF No. 1.) Leave to file a first, second, and third amended complaint was granted. (ECF Nos. 41, 51, 80.) In October 2020, Plaintiff Ousley filed a motion for conditional class certification and court-supervised notice to potential opt-in plaintiffs pursuant to 29 U.S.C. § 216(b) (ECF No. 54), which was unopposed with the stipulation to remove the word "dancer" from the proposed notice (ECF No. 56); the Court granted the motion (ECF No. 58). Six individuals have opted-in to the FLSA collective class, including named Plaintiffs Votaw and Starkey. (ECF Nos. 66, 68, 69, 70, 71.)

Plaintiffs' third amended complaint contains 13 causes of action. (ECF No. 80.) Plaintiff Ousley brings the first seven counts individually. (*Id.* ¶¶ 147–97.) She alleges that CG and/or Defendant Jose Canseco discriminated against, sexually

2

harassed, retaliated against, and sexually assaulted her. (*Id.* ¶¶ 147–97.) Plaintiffs bring Counts VIII–XV[1] ("Wage and Hour Claims") against CG, Defendant Anthony Quaranta, and/or Defendant Nicholas Castaldo ("CG Defendants") for violations of the Fair Labor Standards Act, corresponding Ohio wage and hour statutes, and the Ohio Constitution, Article II, § 34a. (*Id.* ¶¶ 198–300.)

Mr. Canseco was deployed to Eastern Europe on or around March 20, 2022, and Defendants moved to stay this action under § 3932 of the Servicemembers Civil Relief Act during Mr. Canseco's active military service and for 90 days thereafter. (ECF No. 112, PageID 2279; ECF Nos. 113, 115; *see* 50 U.S.C. § 3932.) The Court granted in part and denied in part Defendants' motion to stay, staying Counts I–VII until March 14, 2023, and allowing the Wage and Hour Claims to proceed. The Motion to Certify Rule 23 Class and a Motion for Partial Summary Judgment concern the Wage and Hour Claims, except Count XIII.

## II. MOTION TO CERTIFY RULE 23 CLASS

It is Plaintiffs' burden to establish the Rule 23 prerequisites for class certification. *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851 (6th Cir. 2013). Trial courts have "broad discretion in deciding whether to certify a class, but that discretion must be exercised within the framework of Rule 23." *In re Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996). "Before a court may certify a class, it must ensure that the class satisfies each of Rule 23(a)'s requirements and that it falls within one of three categories permitted

---

[1] There are no counts XII and XIV.

3

by Rule 23(b)." *Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp.,* 497 F.3d 615, 635 (6th Cir. 2007) (citing *Sprague v. General Motors Corp.,* 133 F.3d 388, 397 (6th Cir. 1998) (en banc)).

Indeed, a court must perform a "rigorous analysis" of Rule 23's requirements.[2] *General Tel. Co. v. Falcon,* 457 U.S. 147, 161 (1982). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Hughes,* 2015 WL 4112312, at *4 (quoting *Wal–Mart Stores Inc. v. Dukes,* 131 S.Ct. 2541, 2551 (2011)). Failure to satisfy Rule 23(a) and one of Rule 23(b)'s requirements "dooms the class." *Pilgrim v. Universal Health Card*, LLC, 660 F.3d 943, 946 (6th Cir. 2011).

Rule 23(a) provides that class action lawsuits may be certified if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

---

[2] The Court conditionally certified the FLSA collective class under § 216(b)'s "fairly lenient" standard. (*See* ECF No. 58); *Lewis v. Huntington Nat. Bank,* 789 F.Supp.2d 863, 866 (S.D. Ohio 2011) (quoting *Comer v. Wal–Mart Stores, Inc.,* 454 F.3d 544, 546 (6th Cir. 2006)). At the FLSA conditional certification stage, "[p]laintiffs must only make a modest showing that they are similarly situated to the proposed class of employees." *Lewis,* 789 F.Supp.2d at 867. The criteria for class certification under Rule 23 are "more stringent." *O'Brien v. Ed Donnelly Enter., Inc.,* 575 F.3d 567, 584 (6th Cir. 2009); *see also Hughes v. Gulf Interstate Field Servs., Inc.,* No. 2:14-CV-000432, 2015 WL 4112312, at *2 (S.D. Ohio July 7, 2015) (Sargus, J.).

4

Fed. R. Civ. P. 23(a)(1)–(4). Plaintiffs have failed to meet the commonality and typicality requirements so the Court need not address the remaining Rule 23(a) factors or predominance or superiority under Rule 23(b)(3).

### A. Commonality

"Commonality requires the plaintiff to demonstrate that the class members have 'suffered the same injury.'" *Dukes*, 131 S.Ct. at 2551 (quoting *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 151 (1982)). "That common contention, moreover, must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2551. It "is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation" that is determinative. *Id.* (emphasis in original).

### B. Typicality

The typicality element "is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'" *Whirlpool*, 722 F.3d at 852 (quoting *Sprague*, 133 F.3d at 399). This requirement ensures that "the representatives' interests are aligned with the interests of the represented class members so that, by pursuing their own interests, the class representatives also advocate the interests of the class members." *Id.* at 852–53.

The commonality and typicality requirements "tend to merge because both serve as guideposts for determining whether the interests of the class members will be fairly and adequately protected in their absence." *Mays v. LaRose*, 951 F.3d 775,

793 (6th Cir. 2020) (quotations and citation omitted). Typicality is lacking "[w]here a class definition encompasses many individuals who have no claim at all to the relief requested, or where there are defenses unique to the individual claims of the class members." *Romberio v. UnumProvident Corp.*, 385 Fed.Appx. 423, 431 (6th Cir. 2009) (citing *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006)) (class lacked typicality where putative members worked in different jobs and had different vocational skills).

### C. The commonality and typicality requirements are not met.

Plaintiffs seek certification of the following Ohio Rule 23 class:

> All non-owner, non-employer current and former hourly, employees to whom a tip credit was applied and who worked for the CG Defendants in Ohio during any workweek from May 2, 2016 to the present.

(Rule 23 Mot., ECF No. 103, PageID 2039.) Plaintiffs describe the wage and hour violations CG has allegedly committed in their motion. First, Plaintiffs argue the CG Defendants paid putative class members who received tip credits less than half of the minimum wage rate required by the Ohio Constitution, Article II, § 34a. (Rule 23 Mot. PageID 2052.) Ohio law requires employers to pay tipped employees half of minimum wage prior to taking a tip credit toward the payment of minimum wage. Ohio Const. Article II, § 34a. For example, in 2018 minimum wage in Ohio was $8.30, so the tipped employee minimum wage was $4.15.[3] Ms. Ousley and Mr.

---

[3] (Rule 23 Mot. PageID 2051 n.27) (citing https://perma.cc/RT77-6FLN). Federal Rule of Evidence 201(b)(2) allows the Court to take judicial notice of "a fact that is not subject to reasonable dispute because it: . . . (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The Court takes judicial notice of the minimum wage amounts set by the Ohio Department of Commerce.

6

Votaw were paid incorrect tipped employee minimum wage of $4.05 per hour instead of $4.15 in 2018. (*Id.* PageID 2052; *see* ECF No. 100-13, PageID 1642.)

Next, Plaintiffs contend that putative class members who are or were floor hosts, like Mr. Votaw and Mr. Starkey, should have been compensated at Ohio full minimum wage rate of pay for all hours worked because they did not perform tipped job duties. (Rule 23 Mot. PageID 2053.)

Third, Plaintiffs assert that according to the CG Defendants' payroll records the putative class members were not paid at least minimum wage when wages and tips were combined. (*Id.* PageID 2054.) For example, Ms. Anita Armstrong was compensated $175.99 for 23.70 hours of work for two weeks of work in 2016, which means she was paid an hourly rate of $7.43 per hour—less than the minimum wage of $8.10 per hour in 2016. (*Id.*)

Plaintiffs also allude to a fourth category of individuals that was not properly paid overtime compensation, but do not elaborate. (*Id.* PageID 2050.)

Plaintiffs conclude that "[b]ecause the CG Defendants applied these policies/practices to all of the bartenders/servers and security guards/personnel at its Ohio location, Named Plaintiffs' minimum wage claim (Count X) is well-suited for class certification and adjudication." (*Id.* PageID 2055.)

As to commonality, Defendants counter that Plaintiffs' proposed class actually includes three different classes and tips were not shared in a uniform manner by CG employees. (Rule 23 Opp., ECF No. 116, PageID 2305–06.) Consequently, Defendants urge common class answers cannot be generated, and the

7

matter is not capable of classwide resolution. (*Id.* PageID 2306.) As to typicality, Defendants argue Plaintiffs have failed to satisfy this requirement too because "individualized assessments are needed" because "the proposed class members worked in entirely different jobs and belonged to different tip pools." (*Id.* PageID 2307.)

While Plaintiffs' proposed class definition has surface appeal, Plaintiffs' brief makes clear that the class they are seeking to represent has not all "suffered the same injury." *See Dukes*, 131 S.Ct. at 2551. As Defendants underscore, Plaintiffs' proposed class seemingly includes separate classes or subclasses: (1) CG employees who were paid the incorrect tipped employee minimum wage; (2) floor hosts who were misclassified as tipped employees but should have been classified as non-tipped employees; and (3) CG employees were not paid at least minimum wage when wages and tips are combined. (Rule 23 Mot. PageID 2050–55.) These groups of CG employees have suffered different injuries in need of distinct answers. Showing "merely that they have all suffered a violation of the same provision of the law" is insufficient. *Dukes*, 131 S.Ct. at 2551.

Plaintiffs urge that the fact that there may be individualized inquiries into the amount of damages for each employee is not enough to invalidate commonality. (Rule 23 Mot. PageID 2061) (citing *See Waters v. Pizza to You, LLC*, 3:19-cv-372, 2021 WL 229040, at *6 (S.D. Ohio Jan. 22, 2021) (Rose, J.).) Plaintiffs' proposed class would indeed include individualized damages inquiries, but that is not the

8

problem; the dilemma manifests prior to any damage inquiries. *See Hughes*, WL 4112312, at *2.

Typicality is also lacking because Plaintiffs' class would include individuals who have no claim at all to certain relief requested—for example, the bartenders, servers, and deejays would have no claim that they were misclassified as tipped employees like the floor hosts. *See Romberio*, 385 Fed.Appx. at 431.

The Court is unable to certify a Rule 23 class, and Plaintiffs' Motion is **DENIED**.

## III. MOTION FOR PARTIAL SUMMARY JUDGMENT

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as

9

to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

      A.     **Messrs. Quaranta and Castaldo are employers.**

As a preliminary matter, the Court must consider whether Messrs. Quaranta and Castaldo, in their individual capacities, held the status of "employers" under the FLSA and Ohio law when the alleged violations occurred.

The FLSA and corresponding Ohio law defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. §203(d); Ohio Const. Article II, § 34a ("same meanings as under the federal Fair Labor Standards Act or its successor law"); Ohio Rev. Code § 4111.02 ("as defined in Section 34a of Article II, Ohio Constitution"). In deciding whether a party is an employer under the Act, the "economic reality" of the employment relationship controls, rather than formalistic labels or common law concepts of agency. *See Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991) (internal quotes and citations omitted).

While "no one factor is dispositive" in determining whether an individual defendant is an "employer" under the FLSA, courts typically focus on the degree of an individual's "operational control of significant aspects of the corporation's day to day functions . . . and who personally made decisions" regarding the corporation's

direction. *Id.* (internal quotes and citations omitted). Additionally, courts have considered financial control over a corporation a significant factor in determining whether an individual is an "employer" under the Act. *See id.* To sum, "[t]his economic reality test extends FLSA 'employer' liability to individuals who are chief corporate officers of the business, have a significant ownership interest in the business, control significant aspects of the business's day-to-day functions, and determine employee salaries and make hiring decisions." *Diaz v. Longcore*, 751 F. App'x 755, 758 (6th Cir. 2018) (citing *Dole*, 942 F.2d at 965–66).

The parties dispute whether Messrs. Quaranta and Castaldo are "employers" under the economic reality test, emphasizing and downplaying certain aspects of their respective roles. (S.J. Mot., ECF No. 120, PageID 2376–78; S.J. Opp., ECF No. 121, PageID 2410–12.) Mr. Quaranta testified: he owns and operates CG (Quaranta Dep., ECF No. 102-1, 15:10–11); that "I am CG Consulting" (*id.* 43:23); he and Mr. Castaldo are 50/50 co-owners of the business (*id.* 21:22–24); they both have "operational control of the business" (*id.* 23:24–24:3); he talks with the general manager, Chuck Hale, three to four times a week; four "if there's any major issues" (*id.* 25:1–6); and he and Mr. Castaldo receive daily sales reports (*id.* 39:14–19). Mr. Hale testified that Messrs. Quaranta and Castaldo hired him, set his rate of pay, and outlined his job duties. (30(b)(6) Dep. 43:6–19.) This evidence makes clear Messrs. Quaranta and Castaldo are "employers."

### B. The Wage and Hour Claims

Counts VIII, IX, X, XI, and XV are wage and hour claims under the FLSA and Ohio law. (S.J. Mot.) Count VIII is an FLSA claim for unpaid minimum wages;

11

Count IX is an FLSA claim for unpaid overtime wages; Count X is a claim for minimum wage violations of the Ohio Constitution Article II, § 34a; Count XI is an Ohio Prompt Pay Act claim under Ohio Revised Code § 4113.15; and Count XV requests that the Court conclude that the CG Defendants' violations of the FLSA were willful, therefore entitling Plaintiffs to compensatory and punitive damages pursuant to Ohio Revised Code § 2307.60. These FLSA and Ohio law claims are intrinsically intertwined. *See* Ohio Const., Article II, § 34a (terms have "same meanings as under the federal Fair Labor Standards Act or its successor law"); *Craig v. Bridge Bros. Trucking, LLC*, 823 F.3d 382, 385 n.1 (6th Cir. 2016) (Ohio Prompt Pay Act "rises and falls" with the underlying FLSA and Ohio wage and hour claims).

Plaintiffs move for summary judgment on behalf of themselves, the four individuals who have opted-into the action under § 216(b), and the Rule 23 putative class members. (S.J. Mot. PageID 2347.) The particular procedural posture of this case—that Plaintiffs moved for summary judgment on behalf of a putative Rule 23 class prior to such a class being certified—has created "an atmosphere of confusion." *Philip Morris Inc. v. Nat'l Asbestos Workers Med. Fund*, 214 F.3d 132, 134 (2d Cir. 2000). Plaintiffs fail to connect their legal argument to the relevant Counts; likewise, they fail to specify which employees are making each legal argument. (S.J. Mot.) Plaintiffs ask the Court to determine whether summary judgment is appropriate on various issues, and sort out to whom those determinations apply. That is not the Court's burden.

Nevertheless, summary judgment is inappropriate because this litigation is replete with genuine issues of material fact on each Count. As to the unpaid minimum wage Counts VIII and X, Plaintiffs argue certain employees were paid less than minimum wage under the FLSA and Ohio law by taking gross wages and dividing by total hours worked. (*Id.* PageID 2356–57.) The gross wages and hour totals are obtained from CG's payroll records, which the parties agree are true and accurate copies. (*Id.* PageID 2355.) Yet, this method requires individualized factual inquiries for each movant on these Counts, and it is unclear who those movants are. Moreover, the CG Defendants have offered evidence that each tipped employee was afforded the opportunity to claim their cash tips at the end of the evening, but often did not do so, and therefore the gross wage numbers Plaintiffs rely on to calculate minimum wage are likely inaccurate. (S.J. Opp. PageID 2399) (citing 30(b)(6) Dep. 67:6–68:4; 99:4–101:6.) Weighing this evidence is the job of a jury.

Plaintiffs next aver certain CG employees, including Plaintiffs Ousley and Votaw, were paid less than half of Ohio's minimum wage rate each year as tipped employees. (S.J. Mot. PageID 2357–58.) Plaintiffs state "[t]here are at least 40 Rule 23 putative class members who were paid at $4.05 per hour in 2017 even though the legal tip credit rate in Ohio for 2017 was $4.08 per hour." (*Id.* PageID 2357) (citing ECF No. 100-12, PageID 1475–1583.) Then Plaintiffs provide "other non-exhaustive examples [of] less than legal tip credit rates." (*Id.* PageID 2358.) These individualized factual inquiries again make summary judgment improper.

13

Plaintiffs assert the CG Defendants violated applicable regulations by (1) allowing managers to retain tips and (2) failing to inform tipped employees of the tip credit provisions. (S.J. Mot. 2358–60, 2369–72.) But the CG Defendants point to 30(b)(6) testimony that managers did not receive tips (S.J. Opp. 2400–01) (citing 30(b)(6) Dep. 49:8–22), as well as evidence that employees were informed of their tipped employee minimum wage rates, and there was a posting listing tipped minimum wage rates and Ohio law on the premises of CG (*id.*) (citing Ousley Dep., ECF No. 97-1, 100:14–23; 30(b)(6) Dep. 88:1–18; 70:6–24). Plaintiffs also argue that the floor hosts are non-tipped workers and therefore are entitled to full minimum wage, but the CG Defendants counter with testimony from a floor host that he received tips he failed to record. (Votaw Dep. 19:15–16, 21:17–19.) These are all issues of material fact for a jury.

Plaintiffs move on their FLSA overtime wage Count IX, but provide limited argument as to why they are so entitled and fail to explain who is moving on this Count. (*See* S.J. Mot. PageID 2361) (citing 30(b)(6) Dep. 58–61, 74–77) (arguing "CG Consulting testified that overtime was paid at the rate of 1.5 x the *tip credit rate*") (emphasis in original). This testimony alone is not enough to demonstrate no genuine issues of material fact exist.

Finally, summary judgment on Count XI is denied because Ohio's Prompt Pay Act "rises and falls" with the underlying FLSA and Ohio wage and hour claims, and there are issues of fact with respect to those claims. *See Craig*, 823 F.3d at 385

14

n.1. Concerning Count XV, Plaintiffs' motion is premature because Plaintiffs have yet to prove the CG Defendants violated the FLSA, let alone did so willfully.

Summary judgment on Counts VIII, IX, X, XI, and XV is **DENIED**.

## IV. CONCLUSION

The Motion to Certify Rule 23 Class is **DENIED**. (ECF No. 103.) The Motion for Partial Summary Judgment is **GRANTED in part**. The Court finds that Messrs. Quaranta and Castaldo are "employers" under the FLSA and Ohio law when the alleged violations occurred. The Motion for Partial Summary Judgment is **otherwise DENIED**. (ECF No. 120.)

    **IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**